## THE STATE, CATHERINE MULLIGAN, PROSECUTRIX, v. THE CITY OF PERTH AMBOY.

1. An ordinance by which a municipal corporation proposes to open a street through private lands is nugatory if the charter of such municipality contains no provisions by which private property can be taken for the public use in question.
2. A municipal corporation, acting under state authority, may, by appropriate legislation, be authorized to take private lands for public use without first making compensation to the owner therefor; in such case provision must, at the time of the taking, exist by which the owner can have his damages assessed by an impartial tribunal, and on his own motion obtain the compensation allowed him.
3. Where such provision is not made in the law which authorizes the municipal action, a landowner may resist the initial attempt to divest him of his title.

---

On *certiorari.*

By an ordinance approved March 4th, 1889, the city of Perth Amboy laid out, opened and extended Rector street

from its present end or termination through the property of the prosecutrix, and determined to take the land and real estate necessary for the purpose of said extension in conformity with the city charter. The following is a copy of the ordinance in question:

*Be it ordained by the City of Perth Amboy:*

SEC. 1. That Rector street shall be laid out, opened and extended from its present end or termination southerly to the northerly line of Lewis street, and to intersect therewith, as the same is recorded in the office of the clerk of the county of Middlesex, in Road Book B, page 309, and as adopted by the council of the city of Perth Amboy, February 12th, 1855, by resolution, but not carried out and completed, and which extension is described as follows, to wit: Beginning at a point of intersection formed by the continuation westerly of the northerly line of Lewis street with the continuation southerly of the easterly line of High street, as it runs before the bend, and measured along the northerly line of Lewis street easterly three hundred and forty-three (343) feet to a point now established as the continuation of Rector street; thence running northerly, by a line parallel with the aforesaid easterly line of High street, one thousand three hundred and forty (1,340) feet to a point in the southerly line of Gordon street, distant three hundred and forty-three (343) feet from the northwesterly corner of the old Sunday School building, and forming a square block by the above lines, extending in width twenty-five (25) feet on each side of said centre lines throughout its entire width.

SEC. 2. And the council do hereby determine to take the land and real estate necessary to be taken for the extension, opening and laying said street, in conformity with the provisions of the city charter.

Approved March 4th, 1889.

THOS. ARMSTRONG, *Mayor.*

Attest—C. C. HOMMANN, *City Clerk.*

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON.

For the plaintiff in *certiorari*, *R. Wayne Parker*.

For the defendant, *J. W. Beekman*.

The opinion of the court was delivered by

GARRISON, J.    The ordinance brought up by this writ is nugatory if the charter of the city of Perth Amboy contains no provision by which private lands can be taken for public use by the proceedings in question.

The sovereign power of compelling an owner to part with the title to his lands is coupled with the correlative duty of providing for the payment of the compulsory purchase.

By the constitution of this state a distinction is made between those cases in which property is taken directly by the state, as by a municipal corporation by state authority, and those cases in which a private corporation, acting as the state's agent, appropriates private property for a public purpose.    In the latter case actual compensation to the owner must precede the taking of his lands, whereas in the former it is enough if provision be made by which the owner can obtain compensation, and that an impartial tribunal is provided for assessing it.    *Loweree* v. *Newark*, 9 *Vroom* 151; *Wheeler* v. *Essex Road Board*, 10 *Id.* 291.

A law which lacks these requisites will not authorize the exercise of this sovereign right.    Furthermore, the provision which thus enables the owner to obtain compensation for his lands must be in existence at the time the power to compel him to part with them is exerted.    *Gaines* v. *Hudson County Commissioners*, 8 *Vroom* 12.

Where no such legislation exists the owner may resist the initial step toward the divestment of his title.

The invasion of his own rights as well as his duties to the representatives of the public requires him to challenge the

improvement at its threshold, before outlay and acquiescence shall have worked to his detriment and to theirs. *Gaines* v. *Hudson County Commissioners, supra.*

The remedy, moreover, in cases when compensation is deferred, must be adequate, one to which the party can resort of his own motion ; it must not be burdened by unusual steps of procedure or other vexatious features. *Butler* v. *Sewer Commissioners,* 10 *Vroom* 667.

Such a remedy can exist only where the owner, who is compelled to part with his property without being paid the price, has his damages legally ascertained under the law which authorized the taking.

The tribunal which is thus to assess the owner's damages may be determined by the constitution or by the statute under which the condemnation proceedings are had. Where the constitution is silent as to the manner in which the assessment for property taken shall be made, the power to take is dormant until the legislature supplies the plan. However ordained the proceeding is judicial in character, and the party in interest is entitled to have an impartial tribunal and the rights and privileges usually deemed essential to a judicial investigation. And, in general, by whatever method the property of an individual is to be divested, under color of law, by proceedings against his will, the existence of the proper machinery must be clear in the law, and a strict compliance with all those provisions which have been therein made for his protection must be shown. *Davis* v. *Howell,* 18 *Vroom* 280 ; 2 *Dill. Mun. Corp.,* § 604.

We have seen that, in the absence of controlling constitutional provision, it is competent for the state to authorize municipal corporations to take private lands for public use without first making payment therefor, although such a course is characterized by Judge Dillon as an unusual one—" The almost invariable, and certainly the just, course, being to require payment to precede or to accompany the act of appropriation." 2 *Dill. Mun. Corp.* 615.

The power delegated, moreover, being a stringent and extraordinary one, no presumptions will be intended against the owner. In any event, if a legislative purpose to postpone appropriation to payment be discovered, it will be given strict effect.

Applying these general principles to the case in hand, it is clear that the proceedings open to the defendant under its charter neither provide for the compensation of the prosecutrix in respect to her lands, nor do they give her that adequate remedy which the organic law guarantees.

By the charter of the city of Perth Amboy, two methods are contemplated by which streets within the city may be opened. The first of these methods proceeds upon the theory of the acquiescence of the majority of the landowners to be affected, after a public advertisement of the nature and expense of the proposed improvement. The provisions of section 56 are all directed toward the estimation of such costs and expense, the ascertainment of the assessment which will fall upon each lot of abutting land, the delineation thereof upon a map to be prepared for that purpose, the filing of said map, and the giving of public notice necessary to the proper approval of parties interested. This method was not adopted in the present case.

The other method proceeds upon a radically different notion. By section 57 it is provided that whenever the action of the city council is originally invoked by three-fourths of the owners of property along the line of the proposed street, all the preliminary estimates and advertisements required by the preceding section may be dispensed with, and the work of opening the street may be forthwith done in conformity with the succeeding sections of the charter. The scheme of municipal action unfolded by the next six sections of the city charter may be epitomized as follows:

By section 58 all the expenses of opening any street shall be assessed by the commissioners of assessment when the same shall be completed, to be communicated to city council in a report. By section 60 it is provided that no land shall be

taken for opening any street without paying to the owner the fair value thereof, which, by section 61, is to be " distinctly estimated, determined, assessed and collected as provided in title IV. of the charter."

Title IV., to which reference is thus made, has no relation to the estimation, determination or assessment of damages for any purpose; neither in it nor elsewhere in the act is any provision made for such a procedure.

The title referred to concerns itself solely with the collection of rates due the city.

If it be contended that by a change in punctuation this title is referred to only to indicate how the damages for lands taken shall be collected, then it is void for unconstitutionality, as the provisions are·for a *pro rata* distribution of cost without regard to benefits. So that, in any event, the mode of ascertaining the amount of the landowner's compensation is left without any provision whatsoever.

A careful study of this charter fails to inform me how, or by whom, or upon what notice, or with what rights of appearance, objection, hearing or appeal, the owner's compensation for his land is to be fixed.

If, however, any one point in the charter stands out clearer than another, it is that the improvement is not to be proceeded with until the owner's compensation has been paid. Section 63 provides that the assessment for the value of land taken is to be tendered and paid to the owner, and that upon filing the receipt of the owner therefor the city officers may proceed with said improvement. That the owner's compensation cannot be paid until it is first ascertained is obvious. This ascertainment must also precede its embodiment in the final report of the commissioners, which, by section 58, cannot come in until the work is completed. So that, even if a tribunal for ascertaining the owner's assessment were provided, it is difficult to see, if the work cannot be begun until the compensation is paid, how it can be finished before the compensation is fixed. From any point of view the act is lacking in those essential

features without which the authority to condemn land cannot exist.

The conclusion thus reached renders it unnecessary to consider the other points raised by the reasons in *certiorari*, and argued before us on the hearing.

The ordinance for the opening of Rector street, in so far as it affects the lands of the prosecutrix, must be set aside.